IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASSOCIATION OF UNIT OWNERS OF
VILLAGE AT MULTNOMAH
CONDOMINIUMS,

       Third-Party Plaintiff,

                            3:11-CV-1228-PK

v.                                  OPINION AND
                                  ORDER

D. BROWN AGENCIES, INC.,

       Third-Party Defendant / Fourth-Party Plaintiff,

v.

FARMERS INSURANCE COMPANY OF
OREGON and DAVID EIDSON,

       Fourth-Party Defendants.

PAPAK, Magistrate Judge:

       Plaintiff Century Surety Company ("Century") filed this action against defendants MV

Partners LLC ("MVP") and Association of Unit Owners of Village at Multnomah Condominiums

(the "Association") on October 11, 2011. At that time, defendants MVP and the Association

Page 1 - OPINION AND ORDER

were opposing parties in a lawsuit brought by the Association in the Multnomah County Circuit Court, in which the Association sought damages from MVP, among other parties, in connection with construction defects in the condominiums at the "Village at Multnomah" and in connection with MVP's efforts to market those same condominiums. In July 2009, MVP notified its insurer, Century, of the Association's claims against it in the Multnomah County Circuit Court, and in November 2009, MVP tendered its defense in that action to Century. MVP and the Association subsequently settled the Multnomah County lawsuit, and pursuant to that settlement, MVP assigned certain rights under its contract of insurance with Century to the Association. Century brought this action seeking this court's declaration that, under its insurance contract with MVP, Century owed no duty either to defend or to indemnify either MVP or the Association in connection with the Association's claims at issue in the Multnomah County lawsuit, and seeking reformation of its insurance contract with MVP to clarify that the policy was at all times an "Owners and Contractors Protective Liability" policy rather than a "Commercial General Liability" policy.[1]

On November 23, 2011, defendants MVP and the Association separately filed answers to Century's complaint, in each case lodging counterclaims against Century for this court's declaration that Century owed MVP the duties both to defend and to indemnify in connection with the Association's claims at issue in the now-settled Multnomah County lawsuit, and for breach of Century's insurance policy with MVP.

On February 13, 2012, the Association filed a third-party complaint against third-party

---

[1] It appears that Century initially issued a Commercial General Liability policy to MVP, but by endorsement dated March 31, 2006, deleted all the Commercial General Liability provisions from the contract.

Page 2 - OPINION AND ORDER

defendant D. Brown Agencies, Inc. ("Brown"). According to the Association's allegations,

Brown was an insurance broker charged with obtaining a Commercial General Liability policy

for MVP, and negligently obtained an inadequate Owners and Contractors Protective Liability

instead, and/or negligently failed to advise MVP that Century had modified its policy issued to

MVP by endorsement to provide Owners and Contractors Protective Liability coverage rather

than Commercial General Liability coverage. In addition, the Association alleges that Brown

negligently cancelled the policy prior to its originally contemplated termination date.

On January 14, 2013, Century, MVP, and the Association reported the settlement of their

dispute. Effective January 24, 2013, Century and MVP were dismissed from this action, and the

Association was dismissed from this action as a defendant only.

On January 30, 2013, third-party defendant Brown filed a fourth-party complaint against

fourth-party defendants Farmers Insurance Company of Oregon ("Farmers") and David Eidson.

By and through its fourth-party complaint, Brown seeks contribution from Farmers and Eidson in

the event the Association recovers against Brown on its third-party claims of negligence, alleging

that any negligence in obtaining an insurance policy for MVP from Century was attributable in

whole or in part to Farmers and/or Eidson.

Now before the court is Eidson's motion (#63) to bifurcate Brown's fourth-party claims

against Farmers and Eidson from the Association's third-party claims against Brown. Farmers

joins in Eidson's motion. I have considered the motion, oral argument on behalf of the parties,

and all of the pleadings and papers on file. For the reasons set forth below, the motion is denied.

## LEGAL STANDARD

Bifurcation of a single action into separate trials is governed by Federal Civil Procedure

Rule 42(b), which "confers broad discretion upon the district court to bifurcate a trial, thereby

deferring costly and possibly unnecessary proceedings pending resolution of potentially

dispositive preliminary issues." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.

2002), *citing Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995). Rule 42(b) specifically

provides that:

> For convenience, to avoid prejudice, or to expedite and economize, the court may
> order a separate trial of one or more separate issues, claims, crossclaims,
> counterclaims, or third-party claims. When ordering a separate trial, the court
> must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). In keeping with the plain language of Rule 42(b), the Ninth Circuit has

affirmed that "Rule 42(b) merely *allows*, but does not require, a trial court to bifurcate cases 'in

furtherance of convenience or to avoid prejudice.'" *Hangarter v. Provident Life & Accident Ins.*

*Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis original), *quoting* Fed. R. Civ. P. 42(b).

## ANALYSIS

The fourth-party defendants offer several discrete grounds in support of their position that

bifurcation of fourth-party from third-party claims would be appropriate here. First, the fourth-

party defendants argue that failure to bifurcate these claims would result in prejudicial delay. In

support of this argument, fourth-party defendants rely on the fact that the Association's claims

against Brown were pending in this action for nearly a year before Brown filed its claims against

Farmers and Eidson, with the consequence that discovery in connection with the association's

claims is near completion, whereas fourth-party defendants are only at the beginning of the

discovery process. Fourth-party defendants argue that discovery in connection with Brown's

claims against them can be expected to require a period of time comparable to that spent by the

Association and Brown on discovery.

I find fourth-party defendants' argument premised on prejudicial delay unpersuasive. As a preliminary matter, the fact that significant discovery has already taken place in this action can be expected to streamline the gathering and production of documentary discovery to which the fourth-party defendants are entitled, and both to reduce the number of necessary depositions and to permit briefer, more focused depositions. I therefore do not expect fourth-party defendants' discovery to require as much time as the fourth-party defendants suggest. More critically, the purportedly undue and prejudicial delay the fourth-party defendants warn of can only be in the resolution of the Association's claims against Brown, and those parties have both expressed themselves willing to afford fourth-party defendants all the time necessary to complete discovery and indicated that they will not be prejudiced by any delay that might thereby be occasioned. The possibility of prejudicial delay therefore does not mitigate in favor of bifurcation.

Second, fourth-party defendants argue that bifurcation would promote judicial economy, a contention that Brown and the Association (which joins in Brown's opposition) vigorously dispute. In support of this argument, fourth-party defendants rely in large part on the undisputed proposition that judgment in Brown's favor on the Association's claims would render Brown's fourth-party contribution claim entirely moot. In addition, fourth-party defendants offer argument that no matter how the Association's claims against Brown are resolved, Brown cannot as a matter of law recover against Eidson or Farmers.

I agree with the fourth-party defendants that judgment in Brown's favor on the third-party claims against it would obviate any need to litigate Brown's fourth-party claims, and that this factor mitigates in favor of bifurcation, in that judicial economy would be promoted by the

avoidance of unnecessary litigation. However, it is equally true that in the event the claims were bifurcated and judgment were rendered in the Association's favor on the third-party claims, litigation of the fourth-party claims would require relitigation of many of the issues raised in the third-party action, and would additionally raise the possibility of inconsistent judgments. It would not be appropriate to enter a bifurcation order on the basis of speculation regarding the ultimate merits of the Association's claim at this stage of these proceedings and on the current evidentiary record, and I decline to do so.

As to fourth-party defendants' argument that the court never need reach the fourth-party contribution claim regardless of the ultimate disposition of the third-party claims, I am not at this stage persuaded that the argument is clearly valid. Moreover, even assuming *arguendo* the validity of the argument's premises, it does not mitigate in favor of bifurcation so much as it does in favor of speedy resolution of the fourth-party claims by dispositive motion.

Third and finally, fourth-party defendants argue, on the basis of "informal[] inquir[y]" conducted by counsel for Eidson and unsupported by evidence, that the parties may have "potentially divergent positions . . . regarding Magistrate Judge consent" and that such potential divergence mitigates in favor of bifurcation. I am fully persuaded that such divergent positions, if established, would be entirely without bearing on the bifurcation question, and decline to bifurcate these proceedings on that basis.

## CONCLUSION

For the reasons set forth above, Eidson's motion (#63) is denied with leave to refile at a

/ / /

/ / /

Page 6 - OPINION AND ORDER

later stage of these proceedings in the event it becomes substantially clear that judicial economy

would be promoted by bifurcation.


Dated this 5th day of June, 2013.

Honorable Paul Papak
United States Magistrate Judge